**YEN PILCH ROBAINA & KRESIN PLC**
6017 N. 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Ty D. Frankel (027179)
TDF@yprklaw.com

**YEN PILCH ROBAINA & KRESIN PLC**
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone: (619) 756-7748
Patricia N. Syverson (020191)
PNS@yprklaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| MARY ABU BAKIR, an Arizona resident, and ALEXANDRA ENGELKE, an Arizona resident, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MEDAVAIL PHARMACY, INC., dba SpotRx, an Arizona corporation, MEDAVAIL TECHNOLOGIES (US) INC., a Delaware corporation, MEDAVAIL TECHNOLOGIES INC., a Canadian corporation, MEDAVAIL HOLDINGS, INC., a Delaware corporation, and MEDAVAIL, INC., a Delaware corporation,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiffs Mary Abu Bakir and Alexandra Engelke ("Plaintiffs"), individually and on behalf of all others similarly situated, for their Complaint against Defendants MedAvail Pharmacy, Inc., dba SpotRx, MedAvail Technologies (US) Inc., MedAvail Technologies Inc., MedAvail Holdings, Inc., and MedAvail, Inc. (collectively "MedAvail") allege as follows:

## I. NATURE OF THE CASE

1. Plaintiffs bring this action against MedAvail for its conduct in violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act" or "WARN").

2. MedAvail conducted its SpotRx operations for several years from its Phoenix, Arizona facility ("Phoenix Site"). Recently, MedAvail decided to sell its SpotRx pharmacy assets to CVS Pharmacy, Inc.

3. Although MedAvail's corporate leaders had been working on the CVS Transaction for some time, MedAvail did not notify its employees of its decision to sell its SpotRx assets until January 18, 2023. As a result of the sale, MedAvail reduced its staff by approximately 75% by conducting a mass layoff involving over 50 employees resulting in immediate, or near immediate, termination.

4. Under such circumstances, the WARN Act requires an employer who is covered by the WARN Act to give at least 60 days advanced notice of layoffs. This notice is intended to give employees 60 days to prepare for the loss of their job, such as by finding a replacement job.

5. If an employer does not provide the required notice, the WARN Act requires the employer to pay each affected employee up to 60 days' worth of wages and job benefits.

6. Covered employers are also required to provide notice of a mass layoff to the head of the appropriate government unit within the state – in Arizona, that is the State Rapid Response Coordinator, Employer Engagement Administration within the Arizona Department of Economic Security ("Rapid Response"). 29 U.S.C. § 2102(a)(2). The purpose of Rapid Response is to, *inter alia*, respond to layoffs and prevent and minimize

1  the impact of a layoff on the workers, businesses, and communities.  *See* Arizona
2  Department of Economic Security, Chapter 2 – Section 900.  Failure to provide such notice
3  results in penalties to the employer of not more than $500 for each day of such violation.
4  29 U.S.C. § 2104(a)(3).

5        7.      Because MedAvail's mass layoff at the Phoenix Site violated the WARN Act,
6  Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23, on
7  behalf of themselves and other similarly situated employees, defined as:

> All MedAvail employees who were terminated on or around January 18,
> 2023, without being provided 60 days' written notice of a mass layoff
> ("SpotRx Layoff Employees").[1]

11       8.      Plaintiffs seek to recover their respective wages, salary, bonuses, health
12  insurance, accrued holiday pay and accrued vacation for 60 days following their respective
13  terminations, including interest thereon, civil penalties and reasonable attorneys' fees and
14  litigation costs on behalf of themselves and all similarly situated former SpotRx Layoff
15  Employees.

## II.  JURISDICTION AND VENUE

17       9.      This Court has jurisdiction over the subject matter and the parties hereto
18  pursuant to 29 U.S.C. § 2104(a)(5) and 28 U.S.C. § 1331.

19       10.     Venue is proper in this District under 29 U.S.C. § 2104(a)(5) and 28 U.S.C.
20  §§ 1391(b) and (c) because all or a substantial part of the events giving rise to the claims
21  occurred in the State of Arizona within this District.  Plaintiffs were employed by MedAvail
22  in this District.

## III.  PARTIES

### Plaintiffs

25       11.     Plaintiff Mary Abu Bakir was employed by MedAvail as a Human Resources
26  Director and was involved in SpotRx business operations for various MedAvail entities

---

[1] Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

1 throughout her employment, including MedAvail Technologies (US) Inc. Plaintiff Bakir worked for MedAvail both remotely and from the physical office headquarters in Phoenix, Arizona until her termination on or about January 18, 2023.

12. Plaintiff Alexandra Engelke was employed by MedAvail as a District Manager and was involved in SpotRx business operations for various MedAvail entities throughout her employment, including MedAvail Pharmacy, Inc. Plaintiff Engelke worked remotely for MedAvail in Phoenix, Arizona until her termination on or about February 9, 2023, and was associated with the Phoenix Site.

### Defendants

13. Defendant MedAvail Pharmacy, Inc., dba SpotRx, is an Arizona for-profit corporation. Defendant MedAvail Pharmacy, Inc.'s registered agent for service of process is Corporation Service Company at 8825 N. 23rd Avenue, Suite 100, Phoenix, Arizona 85021.

14. Defendant MedAvail Technologies (US) Inc. is a Delaware for-profit corporation. Defendant MedAvail Technologies (US) Inc.'s registered agent for service of process is Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware, 19808.

15. Defendant MedAvail Technologies Inc. is a Canadian for-profit corporation registered to do business in Arizona. Defendant MedAvail Technologies Inc.'s registered agent for service of process is Corporation Service Company at 8825 N. 23rd Avenue, Suite 100, Phoenix, Arizona 85021.

16. Defendant MedAvail Holdings, Inc. is a Delaware for-profit corporation. Defendant MedAvail Holdings, Inc.'s registered agent for service of process is Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware, 19808.

17. MedAvail Holdings, Inc., is the parent company of the following wholly owned subsidiaries: MedAvail Technologies Inc., MedAvail Technologies (US) Inc., MedAvail Pharmacy Inc., and MedAvail, Inc.

18. Defendant MedAvail, Inc. is a Delaware for-profit corporation. Defendant MedAvail, Inc.'s registered agent for service of process is Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware, 19808.

19. Defendants MedAvail Technologies (US) Inc. and MedAvail Pharmacy, Inc. exercise their authority to substantially control the day-to-day operations of the SpotRx business arising out of the Phoenix Site such that they are both liable to Plaintiffs and the SpotRx Layoff Employees as an employer.

20. Defendants MedAvail Technologies (US) Inc. and MedAvail Pharmacy, Inc., acted jointly as the employer of Plaintiffs and the SpotRx Layoff Employees.

21. Until their termination, Plaintiffs and all similarly situated SpotRx Layoff Employees were employed by MedAvail, involved in the business operations of SpotRx and received assignments from, and reported to, the Phoenix Site.

## IV. FACTUAL BACKGROUND

### Business Segments of MedAvail

22. MedAvail is a pharmacy technology and services company that has developed and commercialized an innovative self-service pharmacy, mobile application, kiosk, and drive-thru solutions. MedAvail's operations consist of two business segments: Retail Pharmacy Services and Pharmacy Technology.

23. The Retail Pharmacy Services Segment is comprised of MedAvail Pharmacy, Inc., dba SpotRx ("Pharmacy"), and operates SpotRx Pharmacy, a full-service retail pharmacy utilizing automated pharmacy technology. SpotRx pharmacy operations consist of MedCenter kiosk generated sales to patients, including pharmaceuticals and merchandise.

24. The Pharmacy Technology Segment comprises MedAvail Technologies Inc., and MedAvail Technologies (US) Inc. ("Technologies"), which collectively sell the MedPlatform System, which includes the MedCenter prescription dispensing kiosk, software, integration services, and maintenance services.

25. MedAvail's SpotRx business activities originate from and are tied to a single site of employment – the "Phoenix Site" – which is the US corporate headquarters. The address for the Phoenix Site is 4720 East Cotton Gin Loop, Phoenix, Arizona 85040.

26. The lower floor of the Phoenix Site ("Suite 100") houses MedAvail's SpotRx Pharmacy. The majority of the Suite 100 employees were employed by Pharmacy.

27. The upper floor of the Phoenix Site ("Suite 220") houses MedAvail's upper management, as well as the Human Resources Department, IT Department, and the Phoenix Call Center. The majority of the Suite 220 employees were employed by Technologies.

28. Pharmacy and Technology employees all had access to both Suite 100 and Suite 220 of the Phoenix Site.

**Unified Business Operations of All SpotRx Layoff Employees**
**Originated from the Phoenix Site**

29. Even though housed within two different suites within the Phoenix Site, Technologies and Pharmacy employees were all involved in the collective business purpose of SpotRx and worked collectively and collaboratively from the same Phoenix Site to achieve that purpose.

30. MedAvail employees, including Plaintiffs and the SpotRx Layoff Employees, were hired from the Phoenix office and received all on-boarding paperwork from the Phoenix office. Most, if not all, MedAvail employees initially received offer letters originating from both Technologies and Pharmacy – defined as "MedAvail" or "Company" – regardless of which entity was formally their employer. All offer letters were signed by Human Resources personnel with Technologies.

31. Technologies prepared the MedAvail Employee Handbook which applied to all MedAvail employees in the United States – including all the SpotRx Layoff Employees.

32. MedAvail provided some on-going training from the Phoenix Office to the SpotRx Layoff Employees.

33. SpotRx Layoff Employees – including in office, remote and fieldwork staff – received their assignments from the Phoenix Site (either directly or through other employees

- 6 -

associated with the Phoenix Site).

34. MedAvail gave remote devices (such as staff laptops and mobile smartphone devices) to SpotRx Layoff Employees to do their jobs. The equipment was provided and supported by employees at the Phoenix Site.

35. MedAvail did not list the home addresses of the remote SpotRx Layoff Employees as MedAvail businesses addresses, such as in Company directories and other resources. Rather, MedAvail required many Plaintiffs and the SpotRx Layoff Employees to represent that MedAvail's headquarters was their work address.

36. MedAvail required many of the remote SpotRx Layoff Employees to utilize business phone numbers that had Arizona area codes.

37. Plaintiffs and the SpotRx Layoff Employees occasionally had to attend meetings and team building events at the Phoenix Site. These meetings and events usually included both Pharmacy and Technologies employees and would occur in both Suite 100 and Suite 220 of the Phoenix Suite.

38. Plaintiffs and the SpotRx Layoff Employees used the Phoenix Site as a home office for support, including receiving brochures and marketing materials for use in the field as well as picking up office supplies.

39. Many of the employees tied to the Phoenix Site were at one time physically located in the Phoenix Site offices. However, during the COVID-19 pandemic, many of the positions transitioned into fully remote positions. Even though these employees were no longer physically located full time at the Phoenix Site, that was still considered their "home office," and where any support services they required were provided from.

40. Corporate management promoted the concept of "One Team, One Dream" and Technologies and Pharmacy worked together to support this concept. In furtherance of the "One Team, One Dream" corporate concept, all marketing and communications (both internal and external) were branded as MedAvail being one combined entity with both logos appearing on all such materials, such as:



**MedAvail/SpotRx Pharmacy** is a tele-pharmacy company that offers remote self-service pharmacy solutions for dispensing prescription drugs and over-the-counter medications. The automated pharmacy dispensing kiosks are typically deployed in healthcare facilities like clinics and hospitals. Our core platform, the MedCenter, is commercialized through two channels: the SpotRx Pharmacy platform and MedAvail Technologies' hardware.

## Restaurants

### QUICK EATS
*(All restaurants are walkable from the office)*

**Pita Bistro** $ Mediterranean fare and Smoothies

**Urban Bricks** $ Pizza, Pasta, Salads, and Panini's

**Chipotle Mexican Grill** $ Mexican fare offering build-your-own burritos, bowls and salads

### LONG LUNCH
*(Slightly more upscale restaurants within 10 min of the office)*

**Oregano's** $$ Italian fare offering Pizza, Pasta, and more!

**Cornish Pasty Co.** $$ English fare specializing in traditional and vegan Pasties

**Culinary Dropout** $$ British-style gastropub serving inventive cocktails and comfort food

**Perfect Pear Bistro** $$ American fare bistro

**Mellow Mushroom Tempe** $$ Funky art-filled pizzeria featuring craft beer, calzones and allergy friendly options

### HAPPY HOUR
*(The best restaurants Phoenix has to offer, drive distance from the office)*

**Mills Modern Social** $$ (10 min drive) Slick saloon featuring games, sports, and creative cocktails

**Top of the Rock Restaurant** $$$ (3 min drive) New American fare offering 360-degree views of the Valley. Inside the Marriott

**Fellow Osteria & Pizzeria** $$ (15 min drive) Contemporary bar and restaurant offering pizza, pasta, and other classic Italian specialties

**Ocotillo** $$ (17 min) Locally sourced American fare in a modern industrial space

**The Henry** $$ (15 min) Upscale-casual American eatery with a patio and full bar

**The Churchill** $$ (15 min) Locally focused community gathering space home to 10 restaurants, bars and shops

### Arrival

The MedAvail/SpotRx US office is located approximately 10 minutes by car from the Phoenix Sky Harbor International Airport, at 4720 East Cotton Gin Loop, Suite 100, Phoenix, AZ 85040.

*Note: This document is interactive. Hover over restaurant, hotel, and attraction names for links to more information.*



41. In sum, Technologies provided all administrative support to Pharmacy. For example, all human resources and compliance functions for all Pharmacy employees were provided by Technologies employees. All payroll functions for all Pharmacy employees were performed by Technologies employees and if a Pharmacy employee had any payroll issues, they were directed to Technologies employees. All IT support for Pharmacy employees was provided by Technologies employees – in fact, the network and servers for the two entities were connected such that if there was an issue that impacted Technologies' operations it simultaneously impacted Pharmacy's operations. The administrative support provided by Technologies was so significant and comprehensive that had Technologies not provided the administrative support, Pharmacy would not have been able to function on its own. There was no duplication of the administrative support services within the Pharmacy entity.

42. Given the way in which Technologies and Pharmacy worked together and collectively were integral to the overall success of the SpotRx business operations, Technologies and Pharmacy essentially operated as joint employers.

**MedAvail's Mass Layoff of SpotRx Employees**

43. During 2022, MedAvail made the decision to focus on the Pharmacy Technology Segment of its business and ultimately decided to sell its SpotRx assets to CVS Pharmacy, Inc.

44. Having made its decision and determined the SpotRx Pharmacies would be sold to CVS, on January 18, 2023, MedAvail notified over 50 employees that they would be laid off. Because the layoffs were connected to the SpotRx business segment regardless of whether the employee was formally a Technologies or Pharmacy employee, the vast majority, if not all, of the layoffs were employees connected to the Phoenix Site like Plaintiffs.

45. All SpotRx Layoff Employees were required to attend a mandatory meeting on January 18, 2023, during which they were, for the first time, informed of the pending sale and notified that there would be layoffs, some effective immediately.

46. Plaintiffs and the SpotRx Layoff Employees were also sent layoff letters on or about January 18, 2023. Regardless of whether an individual was a Technologies or Pharmacy employee, all SpotRx Layoff Employees received similar letters originated by MedAvail's Human Resources – which was a Technologies department. All SpotRx Layoff Employees were instructed to seek further guidance from Human Resources and to return any necessary paperwork to Human Resources. Most of the letters stated that terminations would be effective immediately, although there was a smaller group of employees who received letters informing them that their final day of employment would be a few weeks later (between February 9-10, 2023) allowing time for those employees to wrap up MedAvail's SpotRx affairs.

47. Because MedAvail terminated over 50 employees associated with the Phoenix Site as a result of its sale of its SpotRx assets, MedAvail's actions constituted a mass layoff.

48. In violation of the WARN Act, MedAvail failed to provide Plaintiffs and the SpotRx Layoff Employees 60 days' notice of the layoff prior to their termination, nor did they provide Plaintiffs and the SpotRx Layoff Employees 60 days worth of wages and benefits they would have received had they been given the proper notice period.

49. MedAvail also failed to provide notice to Arizona's Rapid Response Coordinator in violation of the WARN Act.

50. Plaintiffs and all similarly situated SpotRx Layoff Employees seek to fully recover under the WARN Act, including up to 60 days wages and all applicable benefits, from MedAvail.

## V.  CLASS ACTION ALLEGATIONS

51. Plaintiffs' WARN Act claims are brought as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3). The Class is defined in paragraph 7 above.

52. MedAvail has employed over 50 employees associated with the Phoenix Site. The Class is therefore so numerous that joinder of all members is impracticable. Members of the Class can readily be identified from business records maintained by MedAvail.

53. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a. Whether the provisions of the WARN Act apply;

    b. Whether MedAvail engaged in a "mass layoff" under the WARN Act;

    c. Whether MedAvail failed to provide the required notice under the WARN Act; and

    d. The measure of damages owed under the WARN Act.

54. Like Plaintiffs, all SpotRx Layoff Employees were laid off on or around January 18, 2023. Plaintiffs' claims are therefore typical of the claims of the Class.

55. Plaintiffs have no interest antagonistic to those of other SpotRx Layoff Employees and have retained attorneys who are knowledgeable in employment law and class action litigation. The interests of the SpotRx Layoff Employees are therefore fairly and adequately protected.

56. This action is maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members.

57. In addition, a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all the members of the Class is impracticable; the defendants acted or refused to act on grounds generally applicable to the Class; and the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. Furthermore, there are no special difficulties in the management of this litigation as a class action.

58. Further, because the damages the individual Class members may be entitled to are relatively small, the expense and burden of individual litigation makes it difficult for members of the Class to individually redress the wrongs done to them. Thus, in the absence

of class treatment, MedAvail's violations of law inflicting substantial damages in the aggregate would go unremedied.

59. Plaintiffs' WARN Act claims are easily managed as a class action. The issue of liability is common to all SpotRx Layoff Employees. Although the amount of damages may differ by individual, the damages are objectively ascertainable and can be straightforwardly calculated.

## VI.  COUNT ONE

### (On Behalf of Themselves and the Class, Violation of the WARN Act - *29 U.S.C. § 2104*)

60. Plaintiffs, on behalf of themselves and all those similarly situated SpotRx Layoff Employees, incorporate by reference all of the above allegations as though fully set forth herein.

61. At all relevant times, MedAvail employed more than 100 full time employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

62. At all relevant times, MedAvail was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business until it decided to order a mass layoff at the Phoenix Site.

63. On or about January 18, 2023, MedAvail ordered a "mass layoff" at the Phoenix Site, as those terms are defined by 29 U.S.C. § 2101(a)(2).

64. The mass layoff at the Phoenix Site resulted in "employment losses," as that term is defined for at least fifty of MedAvail's employees representing over thirty-three percent (33%) of MedAvail's workforce at the Phoenix Site, excluding "part-time employees." *See* 29 U.S.C. § 2101(a)(3), (6) and (8).

65. Plaintiffs and the SpotRx Layoff Employees were terminated by MedAvail without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff ordered by MedAvail at the Phoenix Site.

66. Given the organizational structure of MedAvail which relied on remote and fieldwork employees who were connected to the Phoenix Site, MedAvail's Phoenix Site was the "single site of employment" for the Plaintiffs and the SpotRx Layoff Employees, as that term is defined in 20 C.F.R. § 639.3(i).

67. Plaintiffs and the Class Members are "affected employees" of MedAvail as within the meaning of 29 U.S.C. § 2101(a)(5).

68. MedAvail was required by the WARN Act to give the Plaintiffs and the SpotRx Layoff Employees at least 60 days advance written notice of their terminations.

69. MedAvail failed to give the Plaintiffs and the SpotRx Layoff Employees written notice that complied with the requirements of the WARN Act.

70. Plaintiffs and each of the SpotRx Layoff Employees, are "aggrieved employees" of MedAvail as that term is defined in 29 U.S.C. § 2104(a)(7).

71. MedAvail failed to pay the Plaintiffs and each of the SpotRx Layoff Employees their respective wages, salary, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to make the 401(k) contributions and provide employee benefits for 60 days from and after the dates of their respective terminations.

72. MedAvail also failed to provide notice of the mass layoff to the State's Rapid Response Coordinator in compliance with the WARN Act. 29 U.S.C. § 2102(a)(2). As a result of MedAvail's failure to provide notice, MedAvail is subject to penalties of not more than $500 for each day of such violation. 29 U.S.C. § 2104(a)(3).

73. Plaintiffs and each of the SpotRx Layoff Employees are entitled to attorneys' fees and costs pursuant to 29 U.S.C. § 2104(a)(6).

## VII.  REQUESTED RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray:

A. For the Court to certify the WARN Act claims as a class action under Fed. R. Civ. P. 23;

B. Designation of the Plaintiffs as the Class Representatives;

C. Appointment of the undersigned attorneys as Class Counsel;

D. A judgment in favor of the Plaintiffs and the other similarly situated former employees equal to the sum of: their unpaid wages, salary, bonuses, accrued holiday pay, accrued vacation pay, health insurance, 401(k) contributions and other employee benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(A);

E. Attorneys' fees in accordance with, 29 U.S.C. § 2104(a)(6);

F. For the Court to award such other monetary, injunctive, equitable, and declaratory relief as the Court deems just and proper;

G. For the Court to award restitution;

H. For the Court to award pre- and post-judgment interest; and

I. For such other relief as the Court deems just and proper.

## VIII.  DEMAND FOR JURY TRIAL

74. Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand trial of their claims by jury to the extent authorized by law.

DATED: May 19, 2023.

**YEN PILCH ROBAINA & KRESIN PLC**

By   *s/ Ty D. Frankel*
Ty D. Frankel
6017 N. 15th Street
Phoenix, Arizona 85014

**YEN PILCH ROBAINA & KRESIN PLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

*Attorneys for Plaintiffs*